UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 11-22734-CIV-SEITZ/SIMONTON

GUCCI AMERICA, INC.,

    Plaintiff,

v.

GUODONG ZHOU, *et al.*,

    Defendants.

_____/

## ORDER GRANTING APPLICATION FOR ENTRY OF PRELIMINARY INJUNCTION

THIS MATTER is before the Court on Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation (the "Application for Preliminary Injunction") [DE-6], and upon the Preliminary Injunction Hearing held on August 26, 2011. The Court has carefully reviewed said Motion, the entire court file and is otherwise fully advised in the premises.

By the instant Application, Plaintiff, Gucci America, Inc. ("Gucci"), moves for entry of a preliminary injunction against Defendants, Guodong Zhou, Zheng Yueruo, Lin Feng, Wu Weilong, Shaosong Lin, Wu Jinlong, and Does 1-10 (collectively "Defendants"), doing business as the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), for alleged violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a) and (d).

The Court convened the hearing on August 26, 2011, at which only counsel for Plaintiff was present and available to present evidence supporting the Application for Preliminary Injunction [DE-6]. Defendants have not responded to the Application for Preliminary Injunction, nor made any filing in this case, nor have Defendants appeared in this matter either individually or through counsel. Because Plaintiff has satisfied the requirements for the issuance

of a preliminary injunction, the Court will grant Plaintiff's Application for Preliminary Injunction [DE-6].

## I. Factual and Procedural Background

On August 18, 2011, the Court entered a temporary restraining order on the following facts from Plaintiff's Complaint [DE-1], First Amended Complaint [DE-5], *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation [DE-6], and supporting evidentiary submissions.

Gucci is a corporation duly organized under the laws of the State of New York, with its principal place of business in the United States located at 685 Fifth Avenue, New York, New York 10022. (First Amend. Compl. ¶ 2.) Gucci is engaged in the manufacture, promotion, distribution, and sale in interstate commerce, including within this Judicial District, of high quality products under multiple federally registered trademarks. (Declaration of Stacy Feldman in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Feldman Decl."] ¶¶ 4-5.)

Gucci is the owner of all rights in and to the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office:

| Mark | Registration No. | Registration Date |
|---|---|---|
| GUCCI | 0,876,292 | September 9, 1969 |
| GUCCI | 0,959,338 | May 22, 1973 |
| GG | 1,107,311 | November 28, 1978 |

| | | |
|---|---|---|
| (Green Red Green Stripe Design) | 1,122,780 | July 24, 1979 |
| GUCCI | 1,168,477 | September 8, 1981 |
| | 3,039,629 | January 10, 2006 |
| | 3,072,549 | March 28, 2006 |
| | 3,376,129 | January 29, 2008 |
| | 3,378,755 | February 5, 2008 |
| | 3,391,739 | March 4, 2008 |

(collectively the "Gucci Marks") which are registered in International Classes 9, 14, 18, and 25, and are used in connection with the manufacture and distribution of, among other things, handbags, wallets, footwear, belts, shirts, hats, sunglasses, and watches. (Feldman Decl. ¶ 5; *see also* United States Trademark Registrations of the Gucci Marks at issue ["Gucci Trademark Registrations"] attached as Composite Exhibit A to the Feldman Decl.)

Defendants have advertised, offered for sale, and/or sold at least handbags, wallets, footwear, belts, shirts, hats, sunglasses, and watches, bearing what Plaintiff has determined to be counterfeits, reproductions, and/or colorable imitations of the Gucci Marks. (Feldman Decl. ¶¶ 11-13; Declaration of Eric Rosaler in Support of Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation ["Rosaler Decl."] ¶ 4 and Composite Exhibit A attached thereto; Declaration of Stephen M. Gaffigan in Support of Plaintiff's *Ex Parte*

Application for Entry of Temporary Restraining Order and Preliminary Injunction ["Gaffigan Decl."] ¶¶ 2-5 and Composite Exhibits A, B, and C attached thereto.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Gucci Marks. (Feldman Decl. ¶ 9.)

Plaintiff retained Eric Rosaler ("Rosaler") of AED Investigations, Inc. to investigate suspected sales of counterfeit Gucci branded products by Defendants. (Feldman Decl. ¶ 10; Rosaler Decl. ¶ 3.) Rosaler accessed the Internet website operating under the domain name **guccireplicastore.com** and placed an order for the purchase of a Gucci branded wallet, to be shipped directly to his address located in Aventura, Florida. (Rosaler Decl. ¶ 4 and Composite Exhibit A attached thereto.) Rosaler finalized payment for the wallet via the Western Union Financial Services, Inc. account of the Defendant GuoDong Zhou and was given a Money Transfer Control Number ("MTCN") of 873-086-0081.[1] (Rosaler Decl. ¶ 6 and Composite Exhibit C attached thereto.) Thereafter, a representative of Gucci, Stacy Feldman, reviewed and visually inspected the web page listings of the Gucci branded wallet purchased by Rosaler, and determined the item was a non-genuine Gucci product. (Feldman Decl. ¶ 12.) Additionally, Feldman reviewed and visually inspected the items bearing the Gucci Marks offered for sale on the Internet websites operating under the Subject Domain Names and determined the products were non-genuine Gucci products. (Feldman Decl. ¶ 13.)

On July 28, 2011, Plaintiff filed its Complaint [DE-1] and, on August 3, 2011, filed its First Amended Complaint [DE-5] against Defendants for trademark counterfeiting and infringement, false designation of origin, and cyberpiracy. On August 3, 2011, Plaintiff filed its

---

[1] Rosaler instructed payment to be made to Guodong Zhou; however, the Western Union Customer Receipt identifies the Receiver as Guo Dong Zhou. (*See* Rosaler Decl. ¶ 6.)

*Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation [DE-6]. On August 18, 2011, the Court issued an Order Granting Plaintiff's *Ex Parte* Application for a Temporary Restraining Order [DE-12] and temporarily restrained Defendants from infringing the Gucci Marks at issue and restrained certain assets tied to the counterfeiting operation. Pursuant to the Court's August 18, 2011 Order, Plaintiff properly served each Defendant with a copy of the *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction and Order Restraining Transfer of Assets Tied to the Counterfeiting Operation and supporting papers, the Court's August 18, 2011 Temporary Restraining Order, the Summons, Complaint, and First Amended Complaint, and all filings in this matter, via e-mail and publication. Thereafter, Proofs of Service were filed confirming service on each Defendant via e-mail and publication.

## II. Conclusions of Law

The declarations and supporting evidentiary submissions Plaintiff submitted in support of its Application for Preliminary Injunction support the following conclusions of law:

A.  Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of handbags, wallets, footwear, belts, shirts, hats, sunglasses, and watches, bearing counterfeits, reproductions, and/or colorable imitations of the Gucci Marks, and that the products Defendants are selling are copies of Plaintiff's products that bear copies of the Gucci Marks on handbags, wallets, footwear, belts, shirts, hats, sunglasses, and watches.

B.  Because of the infringement of the Gucci Marks, Plaintiff is likely to suffer an immediate and irreparable injury if a preliminary injunction is not granted. It clearly appears

from the following specific facts, as set forth in Plaintiff's Complaint, First Amended Complaint, Application for Preliminary Injunction, and accompanying declarations on file that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers because it is more likely true than not that:

1. Defendants appear to be operating Internet businesses to promote, advertise, offer for sale, and sell at least handbags, wallets, footwear, belts, shirts, hats, sunglasses, and watches bearing counterfeit and infringing trademarks in violation of Plaintiff's rights;

2. Plaintiff has well-founded fears that more counterfeit and infringing handbags, wallets, footwear, belts, shirts, hats, sunglasses, and watches bearing Plaintiff's trademarks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products;

3. Plaintiff has well-founded fears that unless the injunction is granted, Defendants can easily and quickly transfer the registrations for the Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiff's ability to obtain meaningful relief;

4. The balance of potential harm to Defendants in restraining their trading in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation and goodwill as a manufacturer of quality handbags, wallets, footwear, belts, shirts, hats, sunglasses, and watches, if such relief is not issued; and

5. The public interest favors issuance of the preliminary injunction in order to protect Plaintiff's trademark interests and the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

C. Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of counterfeit and infringing Gucci branded goods. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Products Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under § 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

D. Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

E. In light of the inherently deceptive nature of the counterfeiting business, and Defendants' blatant violation of the federal trademark laws, Plaintiff has well-founded fears to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Accordingly, after due consideration, it is

ORDERED AND ADJUDGED that Plaintiff's Application for Preliminary Injunction [DE-6] is hereby **GRANTED** as follows:

1.  Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order are hereby restrained and enjoined, pending termination of this action:

    a.  From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Gucci Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiff; and

    b.  From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiff, bearing the Gucci Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Gucci Marks, or any confusingly similar trademarks.

2.  Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall, until the conclusion of this action, discontinue the use of the Gucci Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them including the Internet websites operating under the Subject Domain Names;

3.  Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall, until the conclusion of this action, discontinue the use of the Gucci Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct

computer searches to websites registered by, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

4.      Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

5.      The domain name Registrars for the Subject Domain Names are directed, to the extent it is not already done, to transfer to Plaintiff's counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

6.      The domain name Registrars and VeriSign Global Registry Services, the top-level domain (TLD) Registries for the Subject Domain Names, upon receipt of this Preliminary Injunction shall, to the extent it is not already done, change the registrar of record for the Subject Domain Names to a holding account with the United States based Registrar GoDaddy.com, Inc. GoDaddy.com, Inc. shall hold and/or continue to hold the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, GoDaddy.com, Inc., upon receipt of this Order, shall, to the extent not already done, immediately update and/or not modify the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which links the domain names to the IP addresses where their associated websites are hosted, from NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which currently causes the domain names to resolve to the website where a copy of the Complaint, First Amended Complaint, Summonses and Orders and other documents on file in this action are displayed. Alternatively, GoDaddy.com, Inc. may, to the extent not already done, institute and/or maintain a domain name forwarding which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") http://servingnotice.com/zhou2/index.html whereon a copy of the Complaint, First Amended

Complaint, Summonses and Orders and other documents on file in this action are displayed. The Subject Domain Names shall be maintained on Lock status, preventing the modification or deletion of the domains by the registrar or Defendants;

7. Plaintiff may continue to enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name and thereby evade the provisions of this Order;

8. Each Defendant shall continue to preserve copies of all their computer files relating to the use of any of the Subject Domain Names and shall continue to take all steps necessary to retrieve and preserve computer files relating to the use of any of the Subject Domain Names and that may have been deleted before the entry of this Order;

9. Upon receipt of notice of this Order, Western Union shall divert and/or continue diverting all money transfers sent by United States consumers to GuoDong Zhou and/or Guo Dong Zhou in Guangzhou, China, People's Republic of China, with the date of birth and identification number provided by the recipient of MTCN 873-086-0081, and continue to hold such transfers until it receives further direction from the Court;

10. In the event any money transfers are diverted in accordance with Paragraph 9 of this Order, Western Union shall be permitted to inform consumers who may contact Western Union about the transfers that the transfers are being held pursuant to a Court Order in *Gucci America, Inc. v. Zhou, et al.,* Case 1:11-cv-22734-PAS, entered by the United States District Court for the Southern District of Florida and that they may contact Plaintiff's counsel for additional information;

11. Western Union shall also, to the extent not already done, within five business days of receiving this Order, provide to Plaintiff's counsel records of all money transfers that have been paid to GuoDong Zhou and/or Guo Dong Zhou in Guangzhou, China, People's Republic of China, with the date of birth and identification number provided by the recipient of MTCN 873-086-0081, as well as records of money transfers that have been diverted in accordance with Paragraph 9 of this Order. For any transfers that have been diverted in accordance with this Order, the Plaintiff's counsel will respond to any consumer inquiries and will provide notice of the Order and the disposition of the transfers to any affected consumer;

12. Plaintiff shall maintain its bond in the amount of Thirty Thousand Dollars and Zero Cents ($30,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint, during the pendency of this action, or until further Order of the Court;

13. This Preliminary Injunction shall remain in effect during the pendency of this action, or until such further date as set by the Court or stipulated to by the parties.

DONE AND ORDERED in chambers in Miami, Florida, this 26 day of August, 2011.

_____
PATRICIA A. SEITZ
United States District Judge

cc: All Counsel of Record

...

## SCHEDULE "A"
## SUBJECT DOMAIN NAMES

1. 51nike.com
2. 8000bag.com
3. abercrombiefitch-tp.com
4. adaxie.com
5. adaydxie.com
6. adidas-2011.com
7. adidas543.com
8. adidas668-tw.com
9. adidas88-tp.com
10. adidasclot.com
11. adidashk.com
12. adidasoutlet-tw.com
13. adidas-play.com
14. adidasshoes-tp.com
15. adidassuperstar-shoes.com
16. adidas-tshirt.com
17. adidasy3-tp.com
18. airmax555.com
19. alife555.com
20. alifexie.com
21. allstar555.com
22. allstar-star.com
23. asoshoes-tw.com
24. balenciagatw.com
25. bape-ape-tw.com
26. birkenstockdavos.com
27. blsj11.com
28. brandbag2wholesale.com
29. brandbagsave.com
30. brandhandbags4u.com
31. btp-shoes.com
32. burberry2011.com
33. celine-tw.com
34. cjbl-shoes.com
35. ckckbe.com
36. coa11.com
37. coatw.com
38. cons-tp.com
39. converse998.com
40. converseonestar-tp.com
41. conversetp.com
42. converse-tp.com

43. dcdcdc-tw.com
44. diesel-fashion.com
45. doctorj-tw.com
46. dunhill2010-tw.com
47. dunk555.com
48. elle-tw.com
49. facebook-tp.com
50. footballclub-tw.com
51. freestyle-tw.com
52. g2000-tw.com
53. giftsofurs.com
54. grabbinghandbags.com
55. grabbinglux.com
56. gucci-1689.com
57. gucci2handbags.com
58. gucci4saleonline.com
59. guccibags2sale.com
60. guccibagsestore.com
61. gucci-bb.com
62. guccireplicabag.com
63. guccireplicabags.com
64. guccireplicahandbag.com
65. guccireplicastore.com
66. guccistyledrops.com
67. hermes-tw.com
68. hungerforurbrand.com
69. idearock-tw.com
70. iwc-2011.com
71. jingpinlb.com
72. kedsshoes-tp.com
73. kikstyo-tp.com
74. lacostepolo168.com
75. lee-tp.com
76. luxurybags4sale.com
77. lv-i.com
78. melissa-dg.com
79. momo2011.com
80. montblanc2010-tw.com
81. msprad.com
82. msriben.com
83. mssisley.com
84. myguccibagestore.com
85. myguccibagestores.com
86. myguccibagsstore.com
87. myguccibagstores.com

n/a

88. mygucci-estore.com
89. mygucci-estores.com
90. mygucci-store.com
91. myworldofwatch.com
92. nba-nike.com
93. newbuffalo-tw.com
94. nike543.com
95. nike88888.com
96. nike9a.com
97. nike-airforce3.com
98. nikeji.com
99. nikepro-tp.com
100. nikesb-taiwan.com
101. nike-tshirt.com
102. playboy-taiwan.com
103. play-timberland.com
104. polo-polojeans.com
105. polot-shirt318.com
106. porter2010.com
107. porter-tp.com
108. pradatw.com
109. pramomo.com
110. puma66-tp.com
111. pumatshist.com
112. ryl-shoes.com
113. shoes543.com
114. shoes-tp.com
115. shoesws.com
116. stage-polo.com
117. star-crocs.com
118. stayreal-tp.com
119. tbl-shoes.com
120. tiffany-co5.com
121. timberland555.com
122. timberland-xie.com
123. tland-tw.com
124. tommy-tw.com
125. travelfox-tw.com
126. tw-allstar.com
127. valentino-tw.com
128. vans555.com
129. vans99.com
130. watchoutlet-online.com
131. yesguccigift2u.com
132. yesguccigifts2u.com

133. yesluxurybagssale.com
134. yes-myluxurybags.com
135. yeswatcheshop.com
136. zara-tw.com
137. zlxie-tp.com